UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **KEITH WAYNE ROBERTSON** | **CIVIL ACTION NO. 24-0275** |
| **VS.** | **SECTION P** |
| | **JUDGE TERRY A. DOUGHTY** |
| **WARDEN NOLEN BASS, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Plaintiff Keith Wayne Robertson, a prisoner at Tensas Parish Detention Center ("TPDC") proceeding pro se and in forma pauperis, filed this proceeding on approximately February 23, 2024, under 42 U.S.C. § 1983. He names the following defendants: Warden Nolen Bass and Assistant Warden Johnson.[1] For reasons that follow, the Court should dismiss Plaintiff's claims.

## Background

In his initial pleading, Plaintiff claims that he has been forced to defecate in a clear bag five times because TPDC often lacks water or water pressure for a functioning sewage system. [doc. #s 1, p. 3; 16, p. 5]. Plaintiff filed a second pleading on approximately March 28, 2024. [doc. # 7, p. 1]. He claims that as of the filing of the second pleading he was forced to defecate in a bag a total of 8 times because TPDC lacked water. *Id.* On one occasion, he had to use a toilet full of feces because he was not provided a bag. *Id.* He writes that the "continuing mistreatment" is belittling "in a very harmful way." *Id.*

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

Plaintiff "must put [his] bag of feces in the big bag in the shower full of feces and urine by (80) inmates . . . [sic]." [doc. # 1, p. 3]. He suggests that the bags of feces in the shower are removed hourly. *Id.* He maintains that the feces odor in his dormitory has been extremely bad, placed his health at risk, was dehumanizing, and amounted to punishment, abuse, and mistreatment. *Id.* at 3-4. He states that he breathes the odor in all day and that he has had headaches, a "running nose," "very bad eye irritation," throat irritation, and coughs. [doc. #s 1, p. 4; 16, p. 5]. "[T]he ventilation in D-Dorm does not" remove feces and urine odor and thus deprives Plaintiff of fresh air. [doc. # 16, p. 6]. The ventilation is "full of dust and rust[.]" *Id.*

Plaintiff, who is housed in "D-Dorm," claims that D-Dorm lacks a urinal and that consequently he must urinate in either a shower or toilets which are full of feces. [doc. # 1, p. 3]. He suggests that a shower serves as an improvised urinal when the water is off. And as to the toilets, four of seven are operational. [doc. # 16, p. 5].

Plaintiff claims that for eight days, he only received between 2-5 bottles of water each day for brushing his teeth, washing/showering, cooking, and drinking. [doc. # 1, p. 4]. He also claims he lacked sufficient water for a two-day period and a four-day period.

Plaintiff claims in a second pleading that when the water "comes back on," staff pump feces into a large pile outside on the ground and "over the fence," risking harm to "animals, the land, [and] inmates' health[.]" [doc. # 7, p. 1]. He adds that "the water was off" on February 26, 2024, from 8:00 a.m. to 2:00 p.m., and on February 29, 2024, from 9:00 a.m. to 3:00 p.m. *Id.* at 3. On March 6, 2024, a shower "back[ed]-up" and emitted rust water and feces. *Id.*

In a third pleading, Plaintiff states that on April 22, 2024, he witnessed staff outside disposing of "heavy duty black bags" of feces. [doc. # 15, p. 1]. He states that the bags need "to be removed by [a] specialist." *Id.* He alleges that Bass and Johnson burn the feces "by the shop

2

in the back using wood and pallets[,]" which allegedly pollutes the air. *Id.* at 2. Plaintiff states that federal officials need to investigate. *Id.*

In a fourth pleading, Plaintiff maintains that Bass and Johnson have "very good knowledge of violations" and have fully participated in violating his rights. [doc. # 16, pp. 2, 6].

Plaintiff experienced sadness, frustration, depression, and resentment. [doc. # 16, p. 3]. He seeks: (1) a urinal in D-Dorm; (2) the removal of the "pile of feces"; (3) the repair of the sewage system; and (4) $500,000.00 for his mental and physical pain. [doc. #s 1, p. 5; 7, p. 2].

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

3

unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* A complaint fails to state a claim where its factual allegations do not "raise a right to relief above the speculative level." *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). "[U]nadorned, the-defendant unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 677.

"[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Conditions of Confinement**

"While the Constitution does not require that custodial inmates be housed in comfortable prisons, the Eighth Amendment's prohibition against cruel and unusual punishment does require that prisoners be afforded 'humane conditions of confinement' and prison officials are to ensure that inmates receive adequate food, shelter, clothing, and medical care." *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (*quoting Farmer v. Brennan*, 511 U.S. 825 (1994)). To establish an Eighth Amendment violation, a prisoner must demonstrate that a prison official was deliberately indifferent to conditions that resulted in the "extreme deprivation[,]" *Shannon v.*

*Vannoy*, 682 F. App'x 283, 285 (5th Cir. 2017), of the "minimal civilized measure of life's necessities."[3] *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008). To establish deliberate indifference, the prisoner must show that the official knew of and disregarded an excessive risk to inmate health or safety; the official must have been both aware of facts from the inference could be drawn that a substantial risk of serious harm exists, and he must have drawn the inference. *Farmer*, 511 U.S. at 837.

"*Some* conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (internal quotation marks and quoted source omitted).[4] However, "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.* at 305.

A. <u>Dignity, Sanitation, and Health</u>

 To recapitulate, Plaintiff alleges:

> ○ he has been forced to defecate in a clear bag eight times over approximately a one-year period because TPDC often lacks water or water pressure for a functioning sewage system;

---

[3] The deprivation alleged must be, objectively, sufficiently serious. *Farmer*, 511 U.S. at 834. This standard is not static: the inquiry is whether the conditions are contrary to "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quotation marks and quoted source omitted).

[4] "Such things as food, sleep, clothing, shelter, medical attention, reasonable safety, sleep, and exercise have been recognized by courts as basic physical human needs subject to deprivation by conditions of confinement." *Wilkerson v. Stalder*, 639 F. Supp. 2d 654, 678 (M.D. La. 2007) (citing cases).

- once, he had to use a toilet full of feces because he was not provided a bag;

- on the eight occasions when he was forced to defecate in a bag, he and eighty other inmates had to place their bags of feces and urine in a larger bag in a shower; Plaintiff suggests that the bags of feces in the shower were removed hourly;

- he breathes in a feces odor which is extremely bad; the ventilation system does not remove the odor;

- his dormitory lacks a urinal and, consequently, he must urinate in either a shower or toilets which are full of feces; four of seven toilets are operable;

- when the water "comes back on," staff pump feces into a large pile outside on the ground and "over the fence," risking harm to "animals, the land, [and] inmates' health";

- on March 6, 2024, a shower "back[ed]-up" and emitted rust water and feces;

- Plaintiff witnessed staff outside disposing of "heavy duty black bags" of feces; defendants burn the feces "by the shop in the back using wood and pallets[,]" which allegedly pollutes the air.

i. Dignity

First, Plaintiff appears to claim that defendants have deprived him of dignity by forcing him to (1) defecate in bags eight times over a one-year period and (2) urinate in a shower. The Eighth Amendment does embody "broad and idealistic concepts of dignity, civilized standards, humanity and decency, against which conditions of confinement must be judged." *Rhodes v. Chapman*, 452 U.S. 337, 372 (1981) (internal quotation marks and quoted sources omitted). However, "the Constitution does not mandate comfortable prisons, and prisons . . . cannot be free of discomfort." *Id.* at 349.

Here, as to using bags to relieve himself, Plaintiff alleges that the experiences were belittling and dehumanizing. [doc. # 7, p. 1]. While he does suggest he was deprived of dignity, the eight intermittent and temporary instances of using a bag over the course of one year when

7

the water was not working do not reflect an extreme deprivation of dignity.[5] As to urinating in a shower, Plaintiff does not specify how many times or how often he had to urinate in a shower; he suggests that this occurred on the eight occasions when the water was inoperable. To the extent he had to urinate in the shower eight times over one year, he does not plausibly allege an extreme deprivation of dignity or decency. Also of note, he does not specify if he was forced to urinate in the same shower he used to wash himself; in other words, he appears to indicate that a shower was used as a makeshift urinal when the water was off and, thus, when he could not use the shower for bathing.

Nor does Plaintiff describe a substantial risk of serious harm from any deprivation of dignity. He does not, for instance, describe a substantial risk of serious psychological harm from his sporadic experiences. And he does not describe "wanton infliction of pain." *See Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (observing that the Eighth Amendment prohibits the wanton infliction of pain).

    ii. Sanitation and Health

Plaintiff seems to claim that the same conditions have deprived him of sanitation and health.

---

[5] *See McCoy v. McLeod*, 3 F.3d 439 (5th Cir. 1993) (dismissing a claim that a prisoner was "briefly uncomfortable while being stripped searched on the days when the weather was cold" because the claim did "not approach the type of barbaric conditions of confinement which deprive a prisoner of identifiable human needs."); *Lee v. Burke*, 2007 WL 4608730, at *3 (W.D. La. Dec. 11, 2007), subsequently dismissed, 311 F. App'x 700 (5th Cir. 2009) ("Plaintiff also complains that he had to use the bathroom in a trash bag while he was in the SHU[,]" but "Plaintiff has not established that the living conditions were so serious as to deprive Plaintiff of the minimal measure of life's necessities . . . ."); *Burgos v. Cameron*, 2006 WL 3518647, at *2 (M.D. Fla. Dec. 6, 2006) (holding, where inmates "were provided with plastic bags to use instead of the toilets, which were collected by the officers[,]" that the conditions did not pose "a threat to either Plaintiffs' health or safety" and were not extreme).

      a. <u>Odors</u>

Plaintiff alleges that a feces odor in his dormitory of eighty inmates is or was extremely bad, suggesting that it arose on the eight occasions when inmates had to defecate in bags which were removed from the dormitory hourly. [doc. # 1, p. 3]. To the extent he only experienced the foul odors on eight occasions over approximately a one-year period, he does not describe a sufficiently serious deprivation of sanitation or health.

Plaintiff also states that he must urinate in a shower or in toilets full of feces. [doc. # 1, p. 3]. First, though, he does not allege that urine from the shower contributes to the odor of which he complains. Second, he does not explain how often or how long the toilets were or are full of feces, and consequently he does not allege that the odor from the toilets has been continuously present for the (approximately) one-year period or otherwise present for longer than eight days. Rather, like above, he suggests it was limited to eight days over the course of one year. And he states that four of seven toilets are operable, indicating that only three are "backed up" and that he and other inmates have toilets to use.[6] [doc. # 16, p. 5]. Finally, he mentions that feces are piled and burned outside, but he does not allege that this contributed to the odor in his dormitory.

Overall, Plaintiff does not specify how often or how long he was or is exposed to these odors, when he was exposed, or whether he was able to avoid the odors (for example, he does not specify whether the odors were confined to lavatories). He at best indicates that the odors arose on eight occasions over a one-year period. In this respect, and absent more, he does not

---

[6] *See Bustinza v. Lucio*, 2023 WL 3019690, at *2 (5th Cir. Apr. 20, 2023) (finding, where "one of three toilets of [the inmate's] cell block was broken for approximately one week[,]" that the condition was not sufficiently serious).

9

describe an extreme deprivation.[7] The Fifth Circuit has indicated that "foul odor[s]" caused by inadequate ventilation systems are "inconveniences of prison life" which do not "amount to the denial of the minimal civilized measure of life's necessities[.]" *Farr v. Rodriguez*, 255 F. App'x 925, 927 (5th Cir. 2007); *see LaVergne v. Stutes*, 2021 WL 2877789, at *5 (5th Cir. July 8, 2021) (opining that odors are "not *per se* violations of the Eighth Amendment.").

      b. <u>Voiding in Bags and a Shower</u>

Defecating in bags and urinating in a shower could impact one's health and sanitation in ways other than exposure to the odor. Plaintiff, however, does not allege that either condition deprived him of his health or sanitation (rather, he focuses on the impact to his dignity or decency). He does not claim, for example, that he was unable to wash his hands after using the bags, that the shower is not sanitized/cleaned,[8] or that he contacts waste and is exposed to a

---

[7] *Compare Burnette v. Bureau of Prisons*, 277 F. App'x 329, 331 (5th Cir. 2007) (finding that an inmate stated a claim where he alleged he "was forced to share a trash bag as a toilet with an inmate who was mentally unstable, and [he] could not escape the smell or leaking of the bagged sewerage in his indoor cell because BOP officials refused to allow the cell-mates to remove the bagged sewerage and sealed the cell door with tape[.]"), *with Davies v. Fuselier*, 252 F.3d 434 (5th Cir. 2001) (finding no claim where a detainee claimed "that for five months he was subjected to a daily stench caused by toilets that backed up with human waste" and where he "did not allege that his toilet overflowed or retained waste water for a substantial length of time, that he was forced to contact the waste water, that he was denied the opportunity to clean the area, or that he was exposed to disease . . . ."); *and Williams v. McWilliams*, 20 F.3d 465 (5th Cir. 1994) ("Although Williams alleges that the foul odor was unpleasant he does not allege that it posed a medical or sanitation hazard. Therefore, accepting as true his allegations that the incontinent prisoner caused a foul odor, he has not alleged a cognizable Eighth Amendment claim.").

[8] *See generally Bagwell v. Brewington-Carr*, 2000 WL 1728148, at *18 (D. Del. Apr. 27, 2000), *aff'd*, 33 F. App'x 647 (3d Cir. 2002) ("[W]hile Bagwell also claims that several pre-trial detainees urinate in the showers, there is no indication that the area where the inmates take their showers is not regularly cleaned or is otherwise unsanitary."); *Powell v. Cleveland Cnty. Just. Ctr.*, 2013 WL 951567, at *1 (W.D. Okla. Mar. 11, 2013) ("The only other issue raised by any of Plaintiff's filings is his allegation that detainees are forced to urinate in the shower. This allegation is similarly not sufficient to state a claim for the violation of his constitutional rights."); *Armendariz v. GEO Grp., Inc.*, 2010 WL 11622783, at *10 (D.N.M. June 17, 2010).

10

substantial risk of serious illness. And as above, he does not specify how often he had to use a shower to urinate, he does not indicate that he showered in the same shower in which he urinated, and he does not allege that he is unable to use one of the four operating toilets.[9] The undersigned could speculate how these conditions could potentially impact one's health, but Plaintiff is the master of his complaint, and he does not identify how the conditions impacted *his* health or sanitation. *See Clark v. Harris*, 30 F.3d 1493 (5th Cir. 1994) (holding, where a plaintiff complained of sanitation problems from a temporary lack of water at a jail due to a burst water line, that the plaintiff failed "to allege facts indicating that he was deprived 'of a single, identifiable human need . . . .'").

### c. Pumping Waste Outside a Fence

Plaintiff claims that when the water "comes back on," staff pump feces into a large pile outside on the ground and "over the fence," risking harm to "animals, the land, [and] inmates' health[.]" [doc. # 7, p. 1]. Plaintiff, however, does not state that the feces outside and over the fence impact *his* health. In addition, he does not specify if he can avoid the area in question, how far away the fence is from where he is confined, or how far the pile is away from the fence. While the condition could potentially pose some risk, Plaintiff does not describe a *substantial* risk of serious harm or an extreme deprivation of health, sanitation, or safety.

### d. Burning Waste

Plaintiff states that on April 22, 2024, several months after he initiated this proceeding, he witnessed staff outside disposing of "heavy duty black bags" of feces. [doc. # 15, p. 1]. He

---

[9] *See Bustinza*, 2023 WL 3019690, at *2 (finding, where the plaintiff alleged that one of three toilets of his cell block was broken for approximately one week and dripped human waste on the floor, that the plaintiff did not allege a sufficiently serious deprivation).

11

states that the bags need "to be removed by [a] specialist." *Id.* He alleges that Bass and Johnson burn the feces "by the shop in the back using wood and pallets[,]" which allegedly pollutes the air. *Id.* at 2.

Like the condition above, however, Plaintiff does not allege that the manner in which defendants disposed of the bags on this one occasion impacted him at all. He does not, for instance, state that he was forced to breathe the polluted air or that it contributed to the odor inside his dormitory. He again describes a potential risk, but he does not set forth a substantial risk or an extreme deprivation of a life necessity.

e. Backed-Up Shower

Plaintiff states that on March 6, 2024, a shower "back[ed]-up" and emitted rust water and feces. [doc. # 7, p. 3]. But he does not explain how this one instance posed any risk of harm to him or deprived him of health or safety. Absent more, this lone occasion does not bespeak a substantial risk of serious harm or a sufficiently serious deprivation of a life need.[10]

The undersigned is certainly sympathetic to Plaintiff's experiences and recognizes that he describes suboptimal and distinctly unpleasant conditions, but the intermittent conditions he describes do not, even construing his allegations liberally and in his favor, amount to constitutional violations.[11] Accordingly, the Court should dismiss these claims.

---

[10] *See Pitt v. Weaver*, 2015 WL 2452348, at *4 (E.D. La. May 21, 2015) (holding, where the plaintiff complained of sewage backups, that while "such plumbing problems are undoubtedly annoying, they similarly are not actionable under federal law because the Constitution does not protect inmates from those types of 'life's occasional inconveniences.'"); *Eady v. Head*, 2006 WL 2663776, at *3 (W.D. Tex. Sept. 15, 2006) ("[B]eing exposed to the foul smell of a backed-up shower for two days on two separate occasions does not . . . constitute cruel and unusual punishment in violation of the Eighth Amendment.").

[11] *Compare Harper v. Showers*, 174 F.3d 716, 716 (5th Cir. 1999) (finding a nonfrivolous claim where the plaintiff alleged, *inter alia*, "continual" conditions of "filthy, sometimes feces-smeared cells"), *and Gates v. Cook*, 376 F.3d 323, 338 (5th Cir. 2004) (finding that "extremely filthy"

B. <u>Lack of Water</u>

Plaintiff claims that for eight days, he only received between 2-5 bottles of water each day for brushing his teeth, washing/showering, cooking, and drinking. [doc. # 1, p. 4]. He also claims he lacked sufficient water for a two-day period and a four-day period.

Plaintiff, however, does not specify which life need(s) of which he was deprived (whether an inability to wash, shower, cook, and/or drink water). At best, he writes:

> I have endured being deprived of life's need 'water.' Bass and Johnson aloud lack of potable water do to the body is made-up of 90% of water, my requirement must be unlimited, water is one thing the body needs to flush out the major organs (relating to living) my kidneys that excrete urine also toxins in the body that water washes it out the body[.] Warden Bass and Johnson have made me appreciate water[.] [sic].

[doc. # 16, p. 4].[12] In other words, he suggests he was deprived of drinking water. But he does not plausibly allege that he endured an extreme deprivation. Rather, he received 2-5 bottles of water each day (he does not specify the volume of the bottles) for at most eight days in

---

cells with "crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls . . . would present a substantial risk of serious harm . . . ."), *and Taylor v. Riojas*, 141 S. Ct. 52 (2020) (conditions of confinement alleged by inmate, where for six full days he was confined in a pair of shockingly unsanitary cells, the first of which was covered nearly floor to ceiling in "massive amounts" of feces and the second of which was frigidly cold and equipped with only a clogged floor drain to dispose of bodily wastes, violated the Eighth Amendment), *with Davis v. Scott*, 157 F.3d 1003 (5th Cir. 1998) (holding that confinement for three days in a cell with "blood on the walls and excretion on the floors and bread loaf on the floor" did not state a claim), *and Murphy v. Lester*, 2014 WL 4380845, at *1 (E.D. Tex. Sept. 4, 2014) (finding, where inmates were "restricted to their cells and the dayroom for approximately one week without power or running water[,]" which "caused feces to quickly accumulate in the toilet, creating an unbearable stench[,]" that the conditions were harsh and unpleasant but the inmates were not deprived of basic human needs).

[12] Plaintiff impliedly diminishes the gravity of his claim concerning insufficient water, alleging immediately after the claim that "the real problem" is the sewage system at the facility. [doc. # 16, p. 5].

January.[13] He also does not plausibly allege that he was exposed to a substantial risk of serious harm. Instead, he writes that his water need is unlimited and then, without detailing the risks to which *he* was exposed, explains why human bodies need water to flush organs. The Court should dismiss this claim.[14]

### Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Keith Wayne Robertson's claims be **DISMISSED WITH PREJUDICE** as legally frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the**

---

[13] While not dispositive, Plaintiff does not specify if he was able to obtain other beverages.

[14] *Compare Clark v. Harris*, 30 F.3d 1493 (5th Cir. 1994) (holding that "the temporary lack of water" did not produce "anything more than 'mere discomfort or inconvenience[]' where the condition lasted for the relatively brief period of 27 hours and during this time, prison officials provided Clark with a carton of milk and a cup of water."), *with Valigura v. Mendoza*, 265 Fed. Appx. 232 (5th Cir. 2008) (upholding the denial of prison officials' motion for summary judgment where a prisoner was confined to a bunk twenty-four hours each day for fifteen days, temperatures were "above the eighties and into the hundreds[,]" and the prisoner "was not permitted to get up from his bunk . . . to get a drink of water[.]").

**legal conclusions accepted by the District Court, except upon grounds of plain error.** *See*

*Douglass v. United Services Automobile Association***, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 15th day of May, 2024.

_____
Kayla Dye McClusky
United States Magistrate Judge